My name is RJ Giglio. I represent the appellant Sierra Equipment, Incorporated here. Under Texas law, a lessor can directly sue under its lessee's insurance policy when the lessor contractually obligated the lessee to insure the leased property for the lessor's benefit. That rule is a mouthful, but there's really only one issue before the court. What is the proper method under Texas equitable lien cases for the court to determine that the lessee's obligation was to insure the property for the lessor's benefit? Counsel, let me ask, as we make that decision, as you tell us what the law is, do we have any Texas Supreme Court opinion that gives us the answer? We have, the Texas Supreme Court decision that we have here has expressly adopted the equitable lien doctrine broadly. That's the 1917 Hopkins case adopted by the Texas Commission in 1920. We have no Texas Supreme Court case that has expressly said, do we need explicit words, or do we not, in the context of the equitable lien doctrine? I know you have other things you'll say, but let me go one step beyond that. We have two very learned federal district judges who have come to opposite, different conclusions, maybe not completely opposite, Judge Godby, Judge Clark, both very good people. Is this the kind of case that ought to be certified to the Texas Supreme Court? I do not believe so, Your Honor, and there are a couple of reasons as to why that's true. First, in Vought v. Shoah-Denko, it's 1997, this court said that certification is not a panacea for resolution of complex or difficult state law questions which have not been answered by the highest court. I know this court's aware of that, but I just wanted to set that up. It's not an automatic answer. Well, I'm not searching for a panacea. I want an answer, though. Right. Now, Sierra's position is that, one, there are Texas Supreme Court decisions on contract interpretation law that do answer this question pretty clearly. Those are the Texas cases that say, contract interpretation is a utilitarian weighing of the benefits. Read it from a business person's perspective. Decide what the business purpose was to be served by each obligation. If you do that in this case and you read paragraph 789 of the lease, the only conclusion that is reasonable from there is that this insurance was for Sierra's benefit. Just applying those cases, this court would have to look at the fact that paragraph 7 says, LWL is obligated to replace the equipment. Well, counsel, I've read paragraph 7. And I don't see that it says that any insurance proceeds must then be delivered to the lessor. You're correct that paragraph 7 does not say that. Now, do you have a case that says that it must say this? Not that the benefits will go, but that those proceeds have to belong to and we must pay to the lessor. Do you have a case that says that? Do I have a case that says it needs to have that provision? Yes. No, I do not. I believe that the case law says that. Well, now you have cases that say it does have to have that one. I believe the cases say that they do not have to expressly state that the party said, I am pledging this particular piece of property in satisfaction of this obligation. I don't think that it needs to say that expressly. However, if the court does believe that's necessary, paragraph 8 actually does a better job of that. Paragraph 8 says that lessee shall indemnify and save lessor harmless from any and all injury to loss, but shall be credited with any amounts received by lessor from insurance procured by lessee. It is not the most explicit phrasing I've ever seen. It doesn't obligate the insurance company. It only obligates the lessor. You're right. It obligates the lessee to reimburse from the insurance proceeds. The lessee, yes, to reimburse from the – but it doesn't give the same type of thing that would get the insurance company on the hook. You're right. That directly does not, but that levels very well with the equitable lien doctrine, even if it does not comport with the general rule. But 8 is not talking about insurance proceeds unless it's some insurance of the lessee. The insurance procured by the lessee, correct. 8 says that if the lessee procures insurance pursuant to its obligation to do so and the equipment gets destroyed, any damages it owes us are to be offset by proceeds. That squares – You think this would apply to any insurance, no matter what they were insuring? It only – I think it only – I meant 8. Yes, sir. You mean 8 replies to any insurance, maybe not on this equipment that was damaged? I don't – well, I think that 8 should be read in the context of 7 and 9, which clearly are – It's not talking about this particular insurance, is it? Yes. The particular insurance policy that was procured? I believe that the insurance policy that was procured was done pursuant to the obligations in paragraphs 7, 8, and 9. Well, just to pick up on what Judge Riebley is saying, are these defined terms? Does insurance procured by lessee mean under this policy? It does sound that perhaps Judge Riebley is reading broadly what is there, and it could be any other insurance available has to be dealt with under 8, not just this policy. The parties did not designate that a particular policy would be drawn upon. However, paragraphs 7, 8, and 9 all say that lessee needs to insure against the risk of the destruction of the equipment. The St. Paul case from the Tennessee Court of Appeals that's talking about the equitable lien doctrine says that that exact set of facts is what connects the equitable lien doctrine generally to equitable liens broadly. Chorman v. McCormick, the Texas Court of Appeals decision from Amarillo, says the same thing. Equitable liens are based on the idea that one party owes a prospective debt to another party. If the circumstances suggest they have secured that obligation with a piece of property, that is a matter of equity, the court should grant them access to it. If you apply those principles to this case, LWL was obligated to protect against all the costs associated with destruction and replacement of the equipment. Paragraphs 7, 8, and 9, when reading those through this equitable lens, the court can only come to the conclusion that these parties secured that obligation with these insurance proceeds. That is sufficient to trigger the equitable lien doctrine in this case. We do not need to prove that any express language is required. As I've already stated, the only on-point Texas Supreme Court decisions regard contract law, and that is sufficient to reverse the district court because even though this is an equitable doctrine, that is an error of law that the district court made which must be reviewed on a de novo standard. It's also a 12B1 motion which generally requires a de novo review. But there are other equitable principles that require the court to look to the substance and the economics of this lease, not just the presence or absence of specific words, in order to determine if the equitable lien doctrine applies. It's an ancient equitable maxim that courts look to the substance, not the form. Also, as the Ohio Court of Appeals explained when it's talking about Tillerson, when it's talking about all the jurisdictions across the country applying equitable lien cases, it says that the underlying idea behind the equitable lien doctrine in the insurance context is to allocate risk among the parties the way they contemplated. The parties here contemplated that LWL would be responsible for the risk of destruction and that they would then secure that risk by procuring insurance proceeds. That is itself its own equitable basis for reading the lease in that way. Additionally, there are other provisions in the lease that demonstrate that it must be seen as for Sierra's benefit. The obligation for LWL to deliver the policy to Sierra has been held sufficient by itself by multiple courts outside of Texas to trigger the equitable lien doctrine. The Winnesheet case by the Iowa Supreme Court, relying on another Iowa Supreme Court decision, held that. They said why would the lessee need to deliver the policy for the approval of the lessor unless it was for their benefit? Additionally, while we don't use the words benefit, the wording has changed throughout time. In the 1880s, the United States Supreme Court decision of Ezra Wheeler used the phrase, if the mortgagee procures insurance for the better protection of the mortgagor's interest. It's also evolved in 2015. The Western District of Texas said the farmer's rule says that if the lessor was obligated to procure insurance on behalf of or the lessee on behalf of the lessor, that's sufficient. The fact that these courts have used different words and wording to describe the equitable lien doctrine, even to describe farmers itself, means that the lawyers who drafted Sierra's lease with LWL could not have realized what special words needed to be here. Instead, they needed to exercise business judgment to communicate to another business entity that it was their obligation to secure insurance and it was their obligation to use that insurance to protect against the destruction of equipment. I don't understand the argument that they could not have drafted this better. Oh, that is not my argument. That's not what you're saying. No, no, no. That is not my argument, Judge Elrod. They could have, if they would have drafted this better, it's possible they could have accomplished what you're arguing. Absolutely. Or perhaps you think they did accomplish it. Yes, yes. But we wouldn't be here arguing about it today. You're right. I'm not saying that this lease is the gold standard by any means. They could have put in the explicit words, for the benefit of, additional insured, or lost payee. My point is simply that if the – I mean, Judge Christopher goes through this and how this is just really exceptional and talks about how in that case, I'm talking about in the Westview case. Oh, the Westview case, the recent one out of the Texas Court of Appeals? Yes. The 14th, yes. They didn't do any of the things in this agreement that would be the normal things you would do. My understanding in the Westview is that – It has a different problem to it. Go ahead. Ultimately. But I'm just saying that in the initial discussion, she talks about why it's not additional insured, why it's not, you know, for the benefit. The language, they don't have any of the normal language that's necessary. By they, do you mean us? In your case, yes. In our case, we think that there are several provisions that, A, actually do have great language. We think that the language of obligating them to deliver the policy has been held sufficient under multiple courts. In Texas? Texas does not, other than Century Select, the Eastern District, but no Texas State cases have. The other language is the lease does say it has to be reasonably satisfactory to CIERA. That is not the exact same as for the benefit of, or for the security of, or for the protection of, but I think it does fit within that logical procession. Well, it seems to me the limitation that some courts have put on this, and Judge Godbee did, is that this is a very special kind of case. A direct action by someone who's not identified insured against the insurance company. And so some sort of, bad word, but some sort of formality in the lease, in the insurance contract, does make some sense. Whether there was enough here or not is something that would have to be resolved, but it does seem to me that undermining the usual principle that there are no direct actions against insurance companies unless you have that kind of contractual relationship with them, or some later violation, does require clarity. And some sort of language, maybe not additional insured, but some sort of language that Judge Godbee was looking for has certainly been in other policies, and insurance companies have been on notice of the kinds of things that have satisfied Texas courts. As we deal with this as a federal court, and probably we'll see, except your advice not to certify it, it seems to me not going further than Texas state courts have gone is at least one worthy limitation. I understand your point, Judge Southwick. I think that to require... Good, I was kind of struggling to say it, so I'm glad you got it. No, no, no, we thought about this question a lot. I think that to require certain specific language would contradict the equitable principle that the court looks to the substance, not the form. I think that it would create parameters that are unnecessary to protect the insurer here as well. In the worst case scenario, if they have multiple people come and make one claim under the policy, just as the insurer did in Cable Communications Network, they can always use interpleater and say, you guys fight this out. I'm not concerned about it. Or if they don't think there's any coverage, they can make the exact same substantive arguments and say, there's no coverage, so none of you get it. These facts do not comport with what the policy says. The third point is, I don't know how we would square certain specific language with the Texas Supreme Court's instruction that we need to look at the economic realities of the document. Here, Sierra is confident that an economic analysis of several provisions in 7, 8, and 9, even while not artfully phrased, totally concede, the substance of the obligation that LWL had was for Sierra's benefit. They had to deliver the policy to them. It had to be in form, terms, and amounts, and with an insurance carrier satisfactory to Sierra. It was used to secure LWL's obligation to insure against the risk of destruction of the equipment. They had to insure the full insurable value of the property. The lease expressly says at ROA 165 that Sierra retains title to the property. It's a lease. We have the remainder in interest, which means that if the equipment gets destroyed, Sierra suffers significantly more economic damage than the lessee ever would. The fact that we required LWL to insure the full insurable value and amount satisfactory to us means that they had to act against their own interests. They had to pay more to get better insurance coverage than they would have otherwise. It would be in their natural interest to get cheaper insurance. We required them not to do so. Counsel, I take it that nothing happened in the bankruptcy that affected this lawsuit? Well, there was a declaration that LWL was an affiliate of the Lewis Companies, which means that they were a named insured under the policy. That's important because that means that we distinguish this case from Chartist and from some of the other cases where the named insured did not have a contractual obligation with the plaintiff. We don't have to look at the bankruptcy record in order to decide anything here, though. That's also expressly pleaded in the petition, and it's never been contested. Was it known at that time the condition of the property? The condition of the property? This is just outside the record. Why did it take so long to find out the condition of the property? The trustee told us there was a policy, and we thought we were going to be covered no matter what. It wasn't until we finally never got paid out under our administrative claim that we went and tried to find it. I'm out of time. I will reserve the rest for rebuttal. Thank you. Thank you, Counsel. May it please the Court. Jessica Barger for Lexington Insurance Company. I'd like to address first the question about certification to the Texas Supreme Court that was raised by the panel. This case, I don't think you have to go that far because I think that under the case law and under the agreement, it's clear that this district court was correct in finding that a lessee must expressly agree to procure insurance for leased equipment for the benefit of or loss payable to a lessor. And the agreement here, even if you read all the provisions together, didn't meet that requirement. Well, you say expressly, so maybe not magic words, but whatever combination of words are used, it must be the equivalent of this policy will be for the benefit of whoever. Is that what you're saying? That is what I'm saying, Your Honor. I am saying that in all of the cases, including the Hopkins case, if we go back that far to the 1917 case, which was confirmed by the Texas Commission in 1920, which was then cited by the Farmers case, which Farmers then took a step too far, I believe, in going and saying that that was an equitable lien on insurance proceeds and then said, okay, we're going to extend it to a lease agreement. And not only that, without authority, we're going to create some sort of direct action against an insurer. And even in the Farmers case, there was a loss payable cause. And even in the case following Farmers, in the Tillerson case, there was expressed language in an AIA contract which said for the protection of all parties. And let's even go to the Century Select case, which I think is wrong and even went too far. Even in that case, there was some language that it said for the protection of the customer and Golf Co. and part of Paragraph 7 that was analyzed there. Here, if you read Paragraph 9 and you read all the provisions, even delivery of the policy, which they seem to be hung up on in citing you two cases that are out of state, the Diaz case and the Litez case. Those cases, one is out of Louisiana, which as this Court is aware is a direct action state. This second case is a Mississippi case. The Diaz case, in that situation, they found that it was the second mortgagee and the rationale was the listing of the first mortgagee as a lost payee making its ruling that the second mortgagee could also recover under the policy. So it wasn't just simply the delivery of the policy. In the Litez case out of Mississippi, there was a deed of trust which specifically had language for the bank's benefit and not only that, there was a lost payable clause in the insurance policy which had a blank for a mortgagee which wasn't filled out and the whole issue was whether there was a reformation. So I think if we go to all of the cases and what the District Court was analyzing with this agreement and where the Court was going with farmers, Taylorson based on Hopkins and so forth, this Court could certify it to the Texas Supreme Court as it has done before in the Towes v. Barnes case 340 Southwest 3rd 419 which is the Texas Supreme Court where the Texas Supreme Court actually held a lessor of a gas and oil gas lease is not a third party beneficiary. And in there, there was... Well, you know the Supreme Court of Texas has had trouble with equitable ends. And this would be an extension. That's a friendly question. This would be an extension of their particular limit on equitable ends. I think, Your Honor, the way that the court, the Texas Supreme Court today, the way that they are going to construe contracts, insurance agreements, and third party beneficiaries, whether they're implicit third party beneficiaries or intended third party beneficiaries, exactly how they did it on when this Court certified it in the Towes case. They found specifically that the courts will not confer a third party beneficiary by implication or anything else unless there's clear express language. So I think they may have a problem going as far as extending this equitable lien doctrine. They wouldn't extend farmers. In fact, they would repudiate farmers is what you're saying. It's hard to guess what they're going to do without this Court certifying it. But I don't even think this Court has to go there, like I was saying before, because I think this Court could find the district court's opinion is correct under the analysis between all of the cases and the language. But I think that if we look at what the Texas Supreme Court is doing with insurance policies and contract law, it would, at the very least, at the very least, it would require some language such as the loss payable language. I gave you more help than I think you appreciated. Well, counsel, I'm not here to help or to hurt either. Really, I'm just trying to get to my best understanding of Texas law. Well, looking at lease agreement paragraph 9, what more would it need to say? I'm leaving some words out, so maybe those are the words it needs to say. Lessee will procure at lessee's expense insurance against all risks to the equipment for the full value, and such other insurance there are in amounts against such risks as lessor may reasonably specify consistent with lessor's past practice, deliver the policy to the lessor, shall be in the form, terms, and amounts satisfactory to the lessor, comma, and therefore for its benefit. I mean, that's the implication. It doesn't say for its benefit. If it had worked the phrase in there someplace in order to benefit the lessor, and then off they go with this language that's there, is that enough? And why wouldn't it be? And of course, the next question is, why do you need that? But anyway, let's start with why wouldn't that be enough? Just to say, for the benefit of the lessor whose equipment has been leased, comma, lessee will procure forthwith in the same language as there. Respectfully, Your Honor, the way the agreement is written, we can't read into the language. I mean, we have to read the plain language that it is. I know you're telling me the answer to the ultimate question, which is the policy, but take my hypothetical. We start that same sentence, the second sentence, I guess, at least of what I'm looking at, of paragraph 9, with, in order to benefit the lessor, whose equipment is to be insured, comma, lessee will procure forthwith. Everything else is exactly the same, except we add however many words. I added four or five words. That's got the word benefit and lessor fairly close together. Why wouldn't that be, would that be enough? I think, hypothetically, in your hypothetical, if there was language that said for the benefit of or some loss payable to the lessor. We're just going with benefit. I'm not, assuming farmers is even correct law, that might be enough. I mean, if there is a loss payable clause. The implication of that, I know you're not, I'm not trying to nail you down even on what you just said, because you said maybe and kinda and all that lawyer stuff, but the implication is in that language of the words that aren't there. And so I'm not saying you're wrong, and there's certainly case law that you could use to support your position and have done that very ably, but what is being served by that, if we're trying to figure out on our own, all us little federal judges trying to figure out what Texas thinks, what is being served in the equitable lien context by having those extra words? I think what's being served by the equitable lien is if you're going to create some sort of exception to a direct action rule, there has to be some more specific language than just that they will procure insurance at the expense of an amount satisfactory, because if it's not for the benefit of, or on behalf of, or something specific, then I'm not entirely sure you can even get that far, because you could read this paragraph, and the second paragraph would actually, where the only words on behalf of debtor appear, I think if you read it all together, it could be also on the behalf of, or for the benefit of LWL, the insured, because in this situation, if they had to get the insurance, because they were going to be on the hook to pay for it, if that is the case, and in this situation, they had a protection. Sierra had a protection. If the policy wasn't delivered, and they didn't get the policy, they could have gone out and gotten a policy, or checked to see if there was a policy, and charged back all of those premiums to the lessee, LWL. So I think that the whole problem with not having specific language or expressed language, which is what all these cases are saying, to create some sort of equity, because what they're trying to do, I guess what I'm trying to say, is they're trying to do something they can't do directly. So they're trying to get around that by doing something indirectly by this equitable lien. And if we're going to create a narrow exception to some general rule, then it has to at least have some sort of language which completely confers that benefit onto the lessor. And that's even expanding the doctrine from way back with the whole mortgagee and mortgagor doctrine from 1879 where the Supreme Court started to create it for the better security of the mortgagee to protect for security interest for somebody giving money for property. Do you have a straight up argument in this case that you've made along the way that we don't have it for lessor lessee and that farmers is no good? Is that argument in this case? Or have you always assumed that farmers was Texas law and that we were going to follow that? Because it's persuasive authority, but not binding and eerie. We don't have to follow farmers. And so I'm wondering, did you make an argument all the way up that farmers is not the law of Texas? We have made that argument in our appellee brief. We've said it's never been adopted by Texas. You made it to the district court straight up that even if this was good... We're not going to agree that farmers is good law. Correct. So did you argue that even if this satisfies farmers, farmers is not good Texas law? Well, I guess it's good law. No, I mean it's not the accurate state of the law in Texas. That is correct. We have made that argument all along the way, here and in the district court. In our motion, our 12B1 motion, I don't think we took a position either way. We just said farmers is not correct law or even assuming farmers is not correct law. And then in our appellee brief, we specifically stated we're not going to agree that farmers is accepted law or a good law or accepted by our Texas Supreme Court because it hasn't been accepted by our Texas Supreme Court. Can you remind me of the lay of the land since 1972? What have the Texas courts said? Since 1972? Absolutely. In the context. Since 1972, and this is I guess before or after farmers. And then the next case after that was the Kumis Insurance Republican Dallas case that they cite in their brief. That's 1972. This was not about the equitable lien, and I'm prepared to argue that, but I don't think we need to go there. The next case, which is another case that they're really relying on, is the Tillerson v. Higribedian out of the 14th district. And in this case, this one was specifically where there was a reformation of the policy, and this is the one I was discussing before where there was a contract, an AIA contract, which said we are going to do this and you have to do this for the protection of all parties. And there was an oral agreement that everything would be in the favor. The next case is Duval County Ranch v. Alamo out of Amarillo in 1983. This one, actually, they found the equitable lien does not apply because there was no written agreement at all. So they essentially held exception applies when the lessee is charged with a duty of procuring the policy with the loss payable to the lessor. I don't want to deviate, so I'll keep going. Counsel, while we're talking about all these cases, there was a 1949 case, Fidelity v. Super Code, which made this language that we're talking about required. Do you have any Court of Appeals that rejected Fidelity v. Super Code or disagreed with it? I don't have any Court of Appeals that specifically has rejected the Fidelity v. Super Code case in 1949. This is the one that, of course, extended it to chattel mortgages from regular mortgages. There was a distinguishing in that language, as Your Honor has pointed out, there was specific language that said for the protection of Super Code when Super Code was entering into the agreement with Trammell for the meat equipment. So I think that if you keep going with all of these cases and then you go to 1985, there's the Wade v. Seberg case out of Texarkana. This one applied and discussed Farmers, Abilene, and Super Code and it said here the Wades executed a deed of trust which expressly provided that they would keep the mortgage property for Seberg's protection. And it also, the insurance policy specifically listed Seberg as the lien holder in the policy's lost payee clause. The Tennessee case is also here. The next one is the Cable Communications Network v. Aetna out of the 14th District. That relied on both Farmers and Tillerson and found that there was clear language for the benefit of the obligation to add the lessor as the lost payee. All they did right there is they said, okay, we're going to interplead the funds because we're not sure who is entitled to these funds because there was an oral modification to benefit the lessor, Dr. Duke. The next few cases are Century Select, as this Court is aware of in 2012. I'm sorry, I'm sorry. And the remainder of them are from the federal courts including the most recent one which is the Surry Oaks Eviston insurance case and the Ennis State Bank case which cited the Chartist case. And there they specifically held that there has to be some sort of duty to procure the insurance. And I think if we look at all of these cases from Farmers and even before Farmers, and we compare that with the language here, and we're trying to create some sort of narrow exception, even if we want to create some exception to the rule, I think the District Court got it right. But I think the District Court found that there was a general rule and even though the District Court there didn't even agree or disagree whether Farmers was correct, they found that it didn't meet Farmers because of the loss payable clause. It didn't really reach that issue. We're not going to go there, but Century Select went too far. And I think even if you look at Century Select which is not a Texas case, but I think if you look at the language and the way the analysis is, it could even be distinguishable from the language in this case. So we respectfully believe that Judge Godbee got this case right and we respect that this Court affirm judgment in our favor. Is there confusion in this area such that we need to lay this all out or if we were inclined and I'm not foreshadowing, to distinguish Century and move on, is there a need for us to give guidance in this area? I think that there might be some need to give guidance in this area, whether it comes from I guess it would have to come if this Court is going to do something with Farmers or if we're going to say Farmers or Tillerson or these cases it could be certified just as this Court has done before and let the Texas Supreme Court decide. This Court can also give guidance because there is obviously three or four different district opinions that have analyzed this issue. Guidance of our own case law, not intending in any way to give Texas guidance that we respect their right to have their own law. I definitely do believe that there could be guidance in this circuit as well because of the Century Select case, the Chartist case the Ennis case and the most recent case in Surry Oaks which all have different analysis of this issue and they all kind of cite things differently. So that is definitely a possibility and we respectfully request that the judgment be affirmed in Lexington's favor. Thank you. To address your question, Judge Southwick Sierra's position is that the Equitable Lien Doctrine should be applied in a manner that effectuates its underlying principles. From that perspective, there is nothing that would be added by requiring the addition of additional explicit language in this contract. It wouldn't do anything. The substance of the contract should be examined over the form. The underlying purpose of the Equitable Lien Doctrine in the insurance context is to allocate risk in the manners the party intended. That should still be clear if we apply Texas contract interpretation principles to this in artfully phrased but otherwise obligation heavy contract. It would be clear from that. There is no additional burden on the insurer. They have conceded that point that under cable communications network even if they had this laundry list of evil people who just were suing under the insurance policy they could always use interpleater and say you go fight it out. If they all had to try and make the same underlying factual claim for coverage they could deny all of them with the exact same arguments. The only thing that happens is that Lexington gets a quarter million dollar windfall in this case covering equipment that was destroyed that they agreed to cover but because of the bankruptcy and dereliction of its duties by LWL they never have to pay out under it. They never even have to decide whether they do have to pay out under it and that's a plainly inequitable outcome. Regarding the reversal of farmers if the Texas Supreme Court reversed farmers and if this court decides it would then I completely understand. We certified at the Texas Supreme Court or maybe you could predict that. However, it would also require the court to overturn Tillerson and cable communications network. And Tillerson actually is even better for Sierra than Farmers is because in Tillerson it turned on an oral agreement and the court explicitly said the oral agreement did not discuss the matter of naming the insured or the insureds in the policy. This denies their claim that every case relied on some express language that's plainly not true and in fact many of the courts describe they characterize the contractual language but they don't quote it they don't tell us what language was sufficient there. All we know is what the holdings of those cases were. Additionally, even if we don't have farmers in Tillerson the underlying equitable lien principles independently support reversal here. That's the Chorman v. McCormick logic that equitable liens are designed to enable a party to collect under proceeds under a certain piece of property in satisfaction of a debt. Here we have argued and I think it's clear in the lease that LWL secured its obligation to protect the equipment against destruction with the insurance proceeds. It then didn't protect it. Sierra relied on that method of risk allocation in calculating rental payments and a number of business decisions and thus it should be equitably entitled to those proceeds under general equitable lien principles. That's a decision from 2005. That's also a decision that's been cited by the 14th district and it's been cited by the Texas Court of Appeals in Austin. That could be an independent basis for reversing the district court but even if you hate farmers and you're like it's not good law we've got nothing contemporary with it. I also don't believe Sierra is asking for the extension of the doctrine in any way. We really are trying to argue that the economic reality of this underlying lease is consistent with all of the principles of the equitable lien doctrine and it's an equitable doctrine. If we were trying to sue as third party beneficiaries their arguments would be way better. We don't meet these strict requirements. We're not a third party beneficiary and it's a principle of equity that we only have an equitable remedy because we have no remedy at law. It is the fact that we are not third party beneficiaries that grants us access to the equitable lien doctrine to begin with. Finally, I do think it would be difficult to distinguish Century Select for a couple of reasons. First is that even Judge Godby said I disagree with the holding in Century. He knew he had to reject that case in order to get the holding that he had. Also, in Century Select, Chief Judge Ron Clark expressly said no special magic language is necessary. He said we don't need to add any words to this. He said I'm reading this contract from how a business person would read the contract. What else am I going to conclude? That it was for the lessee's benefit? That if the equipment gets destroyed, LWL gets to keep all the insurance proceeds? In addition to creating an obviously inequitable situation that would also undermine the principles of the equitable lien doctrine and it would leave, just like here, a lessor who owned the property that was insured completely uncompensated for it. If the Court has no remaining questions, I'd like to sit down. Thank you very much. I appreciate your arguments.